# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| QUAWANA BRANDON | CIVIL ACTION NO. 18-848 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WOODSPRING SUITES SHREVEPORT-BOSSIER CITY L.L.C., ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This case arises out of an employee's claims of sexual harassment and retaliation brought against her former employer pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Now before the Court is a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 filed by Defendant Nationwide Hotel Management Company, L.L.C. ("Defendant").[1] [Record Document 30]. Plaintiff Quawana Brandon ("Plaintiff") has filed an opposition and Defendant has filed a reply. [Record Documents 32 & 33]. For the reasons discussed below, the Motion for Summary Judgment [Record Document 30] is hereby **DENIED**.

## BACKGROUND

Plaintiff was hired by Defendant to work as a "Guest Services Representative" at its Bossier City location on December 31, 2015, and worked her first shift on January 2, 2016. Record Documents 30-6, ¶s 2 & 4. Her job duties included washing bedlinens. Plaintiff alleges that on that date she was sexually assaulted by her coworker Anthony Gladney ("Gladney") when he "cornered her and exposed himself to her." Record Document 9, ¶ 6. Gladney worked as a maintenance man

---

[1] Plaintiff originally named Woodspring Suites Shreveport-Bossier City, L.L.C. as the sole Defendant in this case, but amended her complaint in order to name the proper Defendant, Nationwide Hotel Management Company, L.L.C., the management company of Woodspring Suites. Record Documents 7 & 9. Woodspring Suites is apparently a brand of motels which provide both short and longer term stays for guests.

1

at the motel. According to Plaintiff, she was working in a small laundry room when Gladney entered and asked her to teach him some words in Spanish. Record Document 32-3, pp. 1–2. Gladney then asked her to say something sexy in Spanish, which offended Plaintiff. *Id.* at 2. Plaintiff states that at some point in his conversation, Gladney showed her a naked picture of himself on his cell phone. *Id.* Plaintiff then moved a laundry bin in between herself and Gladney, but he approached her and attempted to again show her the picture while she ignored him. *Id.* Next, Gladney began to tell Plaintiff to look down and see what she was "doing to him," gesturing toward his erect penis. *Id.* Plaintiff alleges that Gladney then grabbed her arm and attempted to make her touch his penis, but she pulled her hand back and said "I can't! I can't!" *Id.* Plaintiff asserts that Gladney then exposed his penis to her and again attempted to get her to touch it. *Id.* Gladney also attempted to kiss her, but she resisted. *Id.* Plaintiff claims that this behavior continued while she tried to keep a laundry bin in between herself and Gladney. *Id.* Finally, Plaintiff states that Gladney fully exposed his penis to her, but she was able to exit the laundry room. *Id.*

Defendant states that on January 3, 2016,[2] Plaintiff met with Defendant's local management to discuss her version of events. Record Document 30-6, ¶ 9. Defendant claims that it took written statements from Plaintiff and Gladney on January 4, 2016, when Defendant's corporate management investigated the claim against Gladney. *Id.* at ¶ 10. Defendant also states that Gladney denied Plaintiff's allegations in his written statement on January 4 but then resigned from his employment on January 5. *Id.* at ¶s 11–12.

---

[2] In Plaintiff's statement of Undisputed Material Facts, she confirms that this first meeting took place on January 3. Record Document 32-2, ¶ 9. However, in the next paragraph she asserts that it took place on January 2. *Id.* at ¶ 10. Discrepancies as to the exact date certain events took place persist throughout the filings of both parties but do not impact the Court's ruling.

Plaintiff claims that she explained the incident in detail to Defendant's local management and requested that she not be scheduled to work with Gladney in the future. Record Document 9, ¶ 9. However, Plaintiff asserts that she was required to work with Gladney on January 3, 2016. Record Document 32-2, ¶s 10–11. Plaintiff also claims that she was told that Gladney "had engaged in nearly identical conduct with another woman who had previously worked there, and who had previously complained." *Id.* at ¶ 11. According to Plaintiff, when she explained that she was uncomfortable around Gladney, Defendant's General Manager Kawonna Brown ("Brown") responded that because Plaintiff spoke to Gladney on one occasion, Plaintiff "was not worried about it then," was making it all up, and had brought it on herself. Record Document 9, ¶ 12. Plaintiff also claims that, even though she was told by Defendant that Gladney would no longer be allowed on the premises, he stayed overnight at the hotel several times and came to the front desk and spoke to Plaintiff on January 9, 2016. *Id.* at ¶ 17–20. When Plaintiff told Brown that Gladney was on the premises, Brown instructed her to keep working and not speak to Gladney. *Id.* at ¶ 22.

Plaintiff asserts that Brown began retaliating against her in the following days. *Id.* at ¶ 23. According to Plaintiff, Brown scheduled her to work shifts at the last minute and scheduled her to work overnight shifts immediately followed by morning shifts. *Id.* at ¶ 24. Plaintiff claims that Brown called her on January 12, 2016, and accused her of not working the night shift, even though Brown had told Plaintiff to go home that evening. *Id.* at ¶ 25. Following this event, Plaintiff states that she called Crystal Belmont ("Belmont") at Defendant's corporate office to lodge a complaint against Brown and request a transfer to Defendant's Shreveport location. *Id.* at ¶ 27. Plaintiff states that Belmont said that she would request Plaintiff's transfer to the Shreveport location. *Id.* at ¶ 28. Plaintiff asserts that she never heard back from Belmont, despite calling her two times. *Id.* at ¶s 29–30. Plaintiff alleges that, despite her repeated phone calls, she was never scheduled to work again

and only learned that she had been terminated through discovery in the instant lawsuit. Record Document 32-3, p. 5. Defendant claims that Plaintiff was terminated on January 14, 2016, for failing to appear for two scheduled shifts in a row, on January 12 and 13, 2016. Record Document 30-6, ¶s 13 & 14.

Plaintiff filed the instant lawsuit, alleging that Defendant's actions constituted "purposeful discrimination and harassment against [her] based upon her gender and/or retaliation for opposition to discrimination," in violation of Title VII. Record Document 9, ¶ 33. Plaintiff also asserts that Defendant is liable for the actions of its managers and employees under the doctrine of respondeat superior. *Id.* at ¶ 34. Finally, Plaintiff requests backpay with prejudgment interest, other benefits or seniority to which she may have been entitled, compensatory damages, punitive damages, attorneys' fees, court costs, and any other relief the Court finds proper. *Id.* at p. 5.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings" and "designat[ing] specific facts" for support. *Little v. Liquid Air*

*Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW & ANALYSIS

Plaintiff brings two claims under Title VII, codified at 42 U.S.C. § 2000e, *et seq*. Record Document 9, ¶ 33. Plaintiff alleges that she was subject to "purposeful discrimination and harassment" because of her gender and that she was terminated in retaliation for her opposition to such discrimination. *Id.* The Court will analyze these claims separately.

### I. Sexual Harassment Claim

Under Title VII, harassment is "unlawful when it results in the employer 'discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Gardner*

*v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish a hostile work environment claim, a plaintiff must prove that she

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [sex]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 401 (5th Cir. 2013) (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). Sexual harassment violates Title VII when it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gardner*, 915 F.3d at 325 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Defendant does not dispute the first three elements of Plaintiff's hostile work environment claim but argues that Plaintiff cannot establish the fourth or fifth elements. Record Document 30-1, p. 6. The Court will address the fourth and fifth elements in turn.

    **A.**    **Harassment Affecting a Term, Condition, or Privilege of Employment**

As to the fourth element of a hostile work environment claim, Defendant argues that Plaintiff cannot show that the single encounter between herself and Gladney "was severe or pervasive and affected a term or condition of her employment." Record Document 30-1, p. 6. The "severe or pervasive" standard is meant to be a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Gardner*, 915 F.3d at 325. "A plaintiff 'must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable.'" *Id.* (quoting

6

*Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003)). Among the considerations relevant to determining whether harassment alters the conditions of employment are "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Royal*, 736 F.3d at 401 (quoting *Harris*, 510 U.S. at 23).

The Court finds that Plaintiff has demonstrated that a genuine issue of material fact exists as to whether Gladney's harassment, although confined to a single incident, was severe enough to affect a term, condition, or privilege of her employment. Based on Plaintiff's declaration, she subjectively perceived the harassment as severe. *See* Record Document 32-3, pp. 1–6. Furthermore, the Court finds that Plaintiff's perception of the harassment as severe is objectively reasonable. Gladney's attempts to engage Plaintiff in a sexual manner, including grabbing her arm and trying to force her to touch his penis, attempting to kiss her, exposing his penis to her, showing her a naked photograph of himself, and persisting in these endeavors even after Plaintiff declined his advances, constitutes severe harassment. *Id.* at 1–2. Moreover, the Court finds it obvious that such conduct could be perceived as physically threatening. Plaintiff states that Gladney continued to approach her even after she attempted to place a laundry bin in his way. *Id.* at 2. She also states that Gladney continued to attempt to get her to touch his penis even after she had pulled her arm away from him and told him no, and that he attempted to kiss her more than once. *Id.* Moreover, it is obvious that such an encounter would unreasonably interfere with Plaintiff's work performance if she was required to continue to work with Gladney.

According to the Fifth Circuit, "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment." *Lauderdale v. Tex. Dept. of Crim. Justice, Inst. Div.*, 512 F.3d 157, 163

(5th Cir. 2007). The Court finds that the single incident of harassment alleged in this case certainly qualifies as egregious. Gladney made overt sexual advances toward Plaintiff, telling her to look at what she was "doing to him," in reference to his erect penis, and exposing his penis to her, even after he knew those advances were unwanted. Record Document 32-3, p. 2. In fact, it is difficult for the Court to imagine any scenario in which Gladney's alleged actions would not objectively constitute severe harassment. Accordingly, the Court finds that a genuine issue of material fact exists as to whether the harassment Plaintiff experienced was severe enough to affect a term, condition, or privilege of her employment. Therefore, Defendant is not entitled to summary judgment as to Plaintiff's hostile work environment claim. Nonetheless, the Court will address the fifth element of Plaintiff's claim out of an abundance of caution.

**B.     Employer's Knowledge of Harassment and/or Failure to Take Remedial Action**

Defendant also argues that Plaintiff cannot establish a hostile work environment claim because she cannot show that Defendant knew or should have known of Gladney's harassment and failed to take prompt remedial action. Record Document 30-1, p. 13. "Because the ultimate focus of Title VII liability is on the employer's conduct—unless a supervisor is the harasser, a plaintiff needs to show that the employer knew or should have known about the hostile work environment yet allowed it to persist . . . ." *Gardner*, 915 F.3d at 321–22. Courts have held that an employer is directly liable for an employee's unlawful harassment "if the employer was negligent with respect to the offensive behavior." *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013). A defendant may avoid Title VII liability when it takes prompt remedial action to protect the claimant in response to harassment. *Williams-Boldware v. Denton Cty., Tex.*, 741 F.3d 635, 640 (5th Cir. 2014). Such remedial action will only absolve the employer of liability if it was "reasonably calculated to halt

8

the harassment." *Id.* (quoting *Hockman v. Westward Commc'ns, L.L.C.*, 407 F.3d 317, 329 (5th Cir. 2004)).

Defendant claims that it became aware of the alleged harassment on January 3 and immediately began investigating the incident. Record Document 30-1, p. 15. According to Defendant, on January 4, 2016, Area Manager Richard Peters ("Peters") came to the location of the incident to investigate and obtained written statements from Plaintiff and Gladney. *Id.* Peters met with Gladney again on January 5, 2016, when Gladney resigned and was advised not to return to that location. *Id.* Defendant asserts that these events constitute prompt remedial action on its part. *Id.* at 16.

In opposition, Plaintiff alleges that, even after she made her complaint, she was compelled to work with Gladney on January 3 and 4, 2016. Record Document 32-1, p. 10. Plaintiff also alleges that Gladney was still allowed on Defendant's property and was allowed to have contact with her after she had been told that he was to leave the property on January 5. *Id.* at 11. Defendant rejects Plaintiff's claim that she was compelled to work with Gladney after her complaint, stating that their time sheets reveal that they did not have overlapping shifts on January 3, and that on January 4, Peters came to the location and took written statements from both parties. Record Document 33, pp. 6–7.

To determine whether Defendant took prompt remedial action, the Court turns to previous Fifth Circuit cases on this topic. In *Harvill v. Westward Communications, L.L.C.*, the Fifth Circuit found that the plaintiff had not raised a genuine issue of material fact on the "prompt remedial action" element of her hostile work environment claim when plaintiff and her alleged harasser were immediately separated after plaintiff contacted human resources. 433 F.3d 428, 437, 439 (5th Cir. 2005). In *Tucker v. United Parcel Services, Inc.*, the court found that the defendant took prompt

remedial action when its management suspended the alleged harasser while the investigation was pending, met with him about the investigation, counseled him about workplace policies on harassment, and prohibited him from going into the work area where the plaintiff was assigned. 734 F. App'x 937, 939, 942 (5th Cir. 2018) (per curiam). Similarly, the defendant in *Skidmore v. Precision Printing and Packaging., Inc.*, was found to have taken prompt remedial action when the company supervisor moved plaintiff to a separate shift from the alleged harasser. 188 F.3d 606, 611, 616 (5th Cir. 1999).

Based on the above cases, separation between a plaintiff and the alleged harasser appears to be a common remedial action used by employers to protect a claimant from further harassment. "Whether an employer's response to discriminatory conduct is sufficient 'will necessarily depend on the particular facts of the case—the severity and persistence of the harassment, and the effectiveness of any initial remedial steps.'" *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399–400 (5th Cir. 1996) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 479 (5th Cir. 1989)). Given the severity of the alleged harassment in this case, separation between Plaintiff and Gladney would seem to the Court to be an obvious remedial action in response to Plaintiff's complaint. However, the facts in the record demonstrate that a factual dispute exists as to whether Defendant took appropriate measures to separate Plaintiff from Gladney. To begin, Defendant has not disputed Plaintiff's claim that Gladney stayed overnight at the hotel and came to speak to Plaintiff at the front desk after he was told to vacate the property, and that in response, Brown instructed Plaintiff to continue to work and not speak with Gladney. Record Document 9, ¶s 17–22. Additionally, the timecards submitted by Defendant show that Gladney and Plaintiff were working at the same time for more than four hours on Monday, January 4, 2016. Record Document 30-4, pp. 4 & 9. Plaintiff has demonstrated a genuine issue of material fact as to whether Defendant took prompt, remedial

action in response to Plaintiff's complaint and Plaintiff has therefore established the fifth element of a prima facie Title VII case based on a hostile work environment.

In addition to her assertion that Defendant failed to take prompt remedial action in response to her complaint, Plaintiff also alleges that Defendant knew of a previous sexual harassment claim against Gladney. Record Document 32-1, p. 9. Defendant contends that Plaintiff's declaration on this point is merely a "self-serving unsupported hearsay statement" and that "there is no competent evidence showing Defendant knew or should have known of any prior complaint against Gladney" or that the alleged prior incident even occurred. Record Document 33, p. 7. Because the Court has already found that Plaintiff has demonstrated a genuine issue of material fact as to the fifth element of her hostile work environment claim, it is unnecessary for the Court to determine whether evidence regarding previous claims of harassment against Gladney would help support Plaintiff's claim that Defendant knew or should have known of the harassment in question and failed to take prompt remedial action. However, the Court notes for the sake of clarity that Plaintiff's assertions regarding statements made by Defendant's employees would be admissible non-hearsay at trial because they were made by an opposing party's agent or employee on a matter within the scope of that relationship while it existed. Fed. R. Evid. 801(d)(2)(D); *see also Moss v. Ole S. Real Estate, Inc.,* 933 F.2d 1300, 1312 (5th Cir. 1991) ("If parties to the lawsuit or agents of the parties made the statements, however, the statements are not within the definition of hearsay and are admissible against the parties.").

C. **Sexual Harassment Conclusion**

The Court finds that Plaintiff has demonstrated the existence of a genuine issue of material fact as to the fourth and fifth elements of a hostile work environment claim. Therefore, Defendant's

motion for summary judgment [Record Document 30] is hereby **DENIED** as to the hostile work environment claim based on sexual harassment.

## II.  Retaliation Claim

In addition to her claims of sexual harassment, Plaintiff also brings a retaliation claim pursuant to Title VII. Record Document 9, ¶ 33. Defendant asserts that Plaintiff cannot establish a retaliation claim under Title VII. Record Document 30-1, pp.17–20. Title VII prohibits an employer from taking action against an employee for, among other things, "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). A retaliation claim premised on a pretextual rationale for dismissal is analyzed under the *McDonnell Douglas* framework. *Royal*, 736 F.3d at 400; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  A prima facie retaliation claim requires a plaintiff to establish that (1) she engaged in an activity protected by Title VII, (2) she suffered an adverse employment action; and (3) a causal link exists between her protected activity and the adverse employment action. *Id.* If a plaintiff can establish a prima facie case of retaliation, the burden shifts to the defendant to provide a "legitimate non-retaliatory reason for the employment action." *Id.* The burden then shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Id.* At the pretext stage, the plaintiff must demonstrate "but-for causation." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

### A.  Prima Facie Case

Defendant concedes that Plaintiff has met the first and second elements of a prima facie retaliation claim but argues that Plaintiff has failed to establish a causal link between her complaint against Gladney and her termination. Record Document 30-1, pp. 16–18. In response, Plaintiff

argues that temporal proximity between an employee's protected activity and an adverse employment action, along with an employer's knowledge of the protected activity, can establish a causal link at the prima facie stage. Record Document 32-1, p. 12.

The Court finds that Plaintiff has demonstrated a causal link between her protected activity and the adverse employment action in this case. It is uncontested that Defendant learned of the harassment on January 3, 2016. Record Document 30-6, ¶ 9. According to the termination documentation completed by Brown, Plaintiff was fired less than two weeks later, on January 13, 2016. Record Document 32-3, p. 11. Close temporal proximity such as this supports a causal link. *Royal*, 736 F.3d at 404.

Causation can be established by showing that the decisionmaker was aware of the plaintiff's protected activity. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 171 (5th Cir. 2014). "[I]n determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker." *Id.* (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). In this case, Defendant does not dispute that Brown was the final decisionmaker regarding Plaintiff's termination. Brown was also tasked with investigating Plaintiff's complaint against Gladney and therefore had knowledge of Plaintiff's protected activity. Based on this knowledge, and the temporal proximity discussed in the preceding paragraph, the Court finds that Plaintiff has established a causal link between her termination and her protected activity such that she has established a prima facie case of retaliation.

**B.    Legitimate Reason for Termination**

In the next stage of the retaliation analysis, Defendant must produce a legitimate, non-retaliatory reason for Plaintiff's termination. *Royal*, 736 F.3d at 400. Defendant asserts that it terminated Plaintiff because she failed to appear for two scheduled shifts in a row. Record

Document 30-1, p. 19. In support of this argument, Defendant cites the declaration of Gina Walker ("Walker"), its Human Resources Manager, wherein she states that Plaintiff was terminated by Brown on January 14, 2016, for failing to appear for work as directed on January 12 and 13, 2016. Record Document 30-4, p. 2. Thus, the Court finds that Defendant has met its burden of production at this stage.

    **C.**    **Pretext**

At this third stage of the retaliation analysis, the burden shifts back to the plaintiff to "establish that the employer's stated reason is actually a pretext for unlawful retaliation." *Royal*, 736 F.3d at 400. In order to avoid summary judgment, a plaintiff must show a "conflict in substantial evidence on the question of whether the employer would not have taken the action but for the protected activity." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Long v. Eastfield College,* 88 F.3d 300, 308 (5th Cir. 1996)).

Defendant argues that Plaintiff has offered no evidence to demonstrate that Defendant's proffered reason for her termination, her failure to appear for work as scheduled, is a pretext for unlawful retaliation. Record Document 30-1, p. 19. Plaintiff does not contest that she missed two of her scheduled shifts, but argues that Brown instructed her not to come to work on one of those days. Record Document 32-1, p. 14. According to Plaintiff, Brown terminated her employment for reasons which were false or "unworthy of credence." *Id.* at 15.

Based on the evidence contained in the exhibits attached to Plaintiff's opposition, the Court finds that she has raised a genuine issue of material fact as to whether her complaints against Gladney were the but-for cause of her termination. First, Plaintiff submitted a Personnel Transmittal Form filled out by Brown, indicating that Plaintiff was terminated on January 13, 2016, for insubordination, misconduct/dishonesty, and being absent/tardy. Record Document 32-3, p. 11. The

form provides no details of the events surrounding Plaintiff's termination. *Id.* Furthermore, Defendant's proffered explanation for Plaintiff's termination, missing scheduled shifts, is arguably inconsistent with the Personnel Transmittal Form, stating that Plaintiff was also being terminated for insubordination, misconduct, and dishonesty. Defendant has not acknowledged the other reasons it previously provided in its own documentation, nor has it provided any explanation of same to this Court. *See* Record Documents 30-1 & 33. This gives credence to Plaintiff's argument that Defendant's proffered reason is a pretext for retaliation.

Second, Plaintiff has provided evidence that her termination by Brown might have deviated from Defendant's normal termination policies and procedures. Plaintiff submitted two emails discussing Plaintiff's termination, sent from an individual named Gina Bramlet[3] ("Bramlet") to Peters on January 14, 2016. Record Document 32-3, pp. 12–13. In one email, Bramlet asks Peters if Brown terminated Plaintiff without asking Peters or discussing progressive disciplinary actions. *Id.* Bramlet then states that she does not understand why Brown would terminate Plaintiff without Peters' consent or why Brown listed insubordination, misconduct, dishonesty, and being absent/tardy as reasons for Plaintiff's termination. *Id.* at 12. Bramlet also states that she advised the payroll department not to process Plaintiff's termination "until we find out what is going on with this situation." *Id.* The fact that Bramlet, whose email signature states that she is Defendant's Employee Relations Manager, was surprised that Brown terminated Plaintiff without consulting Peters or pursuing any progressive disciplinary actions indicates that Brown may have deviated from Defendant's normal termination procedures.

---

[3] Plaintiff clarifies that it is her understanding that Gina Bramlet is now known as Gina Walker, Defendant's Human Resources Manager, whose declaration Defendant submitted in support of the instant motion. Record Document 32-3, p. 4.

Defendant argues that any "supposed progressive disciplinary policy" was never a part of its policies or its guidelines contained in the Memo of Understanding signed by Plaintiff when she was hired. Record Document 33, p. 8. However, the fact that Plaintiff was not told of any progressive disciplinary policy when she began her employment does not negate the fact that she has produced evidence indicating that a supervisor in Brown's position with Defendant's enterprise would be expected to engage in progressive disciplinary actions with an employee who missed work or consult with upper management before resorting to termination. *See Paris v. Sanderson Farms, Inc.*, 542 F. App'x 370, 375–76 (5th Cir. 2013) ("It is true that such violation of internal policies, depending on . . . the nature of the internal policy and the extent of the deviation in the particular case, could give rise to evidence of pretext in light of all the other relevant facts.").

Third, Plaintiff submitted a photograph of a cell phone screen displaying a text message sent on January 12 at 8:39 a.m. that states, "You can go on and be off today!" Record Document 32-3, p. 10. The photograph does not indicate that the text is from Brown, but it does support Plaintiff's claim that she was instructed not to attend work that day. Furthermore, in her second email to Peters, Bramlet summarizes the conversation she had with Plaintiff about the events leading up to her termination. Record Document 32-3, p. 13. According to Bramlet, Plaintiff stated that she worked on January 12, 2016,[4] and that she was scheduled to work on January 13 when Brown texted her and said she could take off. *Id.* Plaintiff told Bramlet that, after Plaintiff did not attend work on January 13, Brown stated that she meant that Plaintiff could take off from 9-2, but still expected Plaintiff to return to work that later that day to work a shift referred to as "safety hours." *Id.* An

---

[4] The parties' briefs and the record itself contain several inconsistencies as to whether Plaintiff missed her scheduled shifts on January 12 and 13 or January 13 or 14. The Court finds the difference in accounts of what days certain events happened to be reflective of the factual issues existing in this case.

email from Peters to Bramlet confirms that Plaintiff also told Peters that she missed work because Brown had given her the day off. *Id.* at 14. Defendant responds to Plaintiff's contention that Brown gave her the day off by asserting that, even if Plaintiff missed one shift based on a misunderstanding, Plaintiff has failed to explain why she missed a second shift the very next day. Record Document 33, p. 8. Overall, the fact that Brown terminated Plaintiff at least in part because of a confusing directive given by Brown herself lends support to Plaintiff's argument that her termination was based on something other than her failure to appear for work.

Finally, and perhaps most importantly, Brown and Plaintiff discussed Plaintiff's allegations against Gladney immediately before the termination. According to Bramlet's email account of her conversation with Plaintiff, when Plaintiff attempted to explain her misunderstanding of Brown's text message that caused her to miss work, Brown stated that it was always a misunderstanding with Plaintiff and that Brown "put her neck on the line" for Plaintiff. Record Document 32-2, p. 13. Plaintiff then accused Brown of allowing Gladney onto the hotel property after he had harassed her and of not addressing a similar situation involving Gladney and another employee. *Id.* Plaintiff claims that Brown told her, regarding Gladney's harassment, that "[y]ou weren't worried about it then," which indicated to Plaintiff that Brown blamed her for Gladney's harassment. *Id.* Plaintiff stated that she did not work her scheduled shift on January 14 because of this conversation with Brown and that she wanted to be transferred to a different location because she could not work with Brown anymore. *Id.* The termination form reflects that Brown terminated Plaintiff's employment the same day this conversation took place, on January 13. Record Document 32-3, p. 11.

Along with the temporal proximity between her protected activity and her termination, and the fact that Brown was the final decision maker and knew of Plaintiff's protected activity, Plaintiff has provided evidence that creates a genuine issue of material fact as to whether Defendant's stated

17

reason for her termination was legitimate or pretextual. This evidence includes: (1) the termination form, stating additional reasons for Plaintiff's termination that have never been referenced again; (2) the emails between Bramlet and Peters stating that Brown did not inform Peters or request his permission before terminating Brown; (3) Bramlet's reference to Brown's failure to engage in any sort of progressive discipline before terminating Plaintiff; (4) the text message to Plaintiff on January 12 stating that she could "go on and be off today"; and (5) emails documenting that Plaintiff and Brown discussed Gladney's harassment immediately before Brown fired Plaintiff. This evidence is sufficient to establish a genuine issue of material fact as to whether Plaintiff's protected activity was the but-for cause of her termination. *Garcia*, 938 F.3d at 243.

### D. Retaliation Conclusion

Based on the reasons discussed above, the Court finds that Plaintiff has met her burden on summary judgment at the third stage of the *McDonnell Douglas* framework by showing a conflict in substantial evidence on the question of whether Brown would have terminated Plaintiff if she had not complained about Gladney's harassment. *Feist,* 730 F.3d at 454. Therefore, Defendant's motion for summary judgment [Record Document 30] is hereby **DENIED** as to Plaintiff's retaliation claims.

## CONCLUSION

For the reasons discussed above, genuine issues of material facts exist as to both Plaintiff's hostile work environment claim and her claim of retaliation. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Record Document 30] is hereby **DENIED**.

**THUS DONE AND SIGNED** this 13th day of April, 2020.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE